### MARION SEATON v. THE STATE.

No. 11267.     Delivered January 11, 1928.

**Manslaughter—Impeaching Witness—Limiting Testimony—Error to Omit.**

Where the wife of the deceased and her son were sought to be impeached by contradictory statements made at another time, it was reversible error for the court to fail to limit such testimony to the purpose of impeachment, and to tell the jury that such contradictory statements could not be considered as evidence of appellant's guilt. See Joy v. State, 51 S. W. 933; Hiles v. State, 163 S. W. 717, and Branch's P. C., Sec. 188.

Appeal from the District Court of Rains County. Tried below before the Hon. Grover Sellers, Judge.

Appeal from a conviction for manslaughter, penalty two years in the penitentiary.

The opinion states the case.

*Jones & Jones,* for appellant. On failure to limit impeaching testimony, appellant cites Miles v. State, 163 S. W. 717; Joy v. State, 51 S. W. 933.

*A. A. Dawson,* State's Attorney, for the State.

MARTIN, JUDGE.—Offense manslaughter, penalty two years in the penitentiary.

Appellant and the deceased, Sweeden, were brothers-in-law, the wife of deceased being the sister of appellant. The difficulty arose over the conduct of deceased and his daughter by a former marriage toward the said sister of appellant. The

evidence is conflicting on the issue of self-defense set up by the appellant. Appellant claims that deceased had a pistol in his bosom and was about to draw same when he shot and killed him. There was a pistol found under the body of deceased near his bosom.

The wife of deceased and her son, Walter Sweeden, both made a statement before the Justice of the Peace shortly after the killing, which was introduced in evidence by the state to contradict their evidence given on the trial of the case. The failure of the court to limit the consideration of these statements as affecting the credibility of the witnesses and for impeachment purposes only was made the proper subject of exceptions in the court below and is assigned as reversible error in this court.

Part of the evidence of deceased's wife with reference to the immediate facts surrounding the killing given on the main trial is as follows:

"I saw Mr. Sweeden immediately after he fell and his pistol was about half way out of his bosom, right under him here. He fell with that pistol in that position. Nobody put that pistol there after he fell."

A portion of her statement before the Justice of the Peace, introduced in evidence, is as follows:

"I did not see and will not swear I saw my husband with a pistol before he was shot. I didn't see my husband get a pistol before he was killed. He had on pants and overshirt and undershirt, no coat nor vest, when he was murdered."

The evidence, in part, of her son, Walter Sweeden, on the trial of the case, is as follows:

"When the first shot was fired I stepped out on the gallery. * * * Right immediately after the shooting I went back in the house and saw my father lying on the floor, and saw a pistol there kinder in the shirt—anyway, it was right under him kinder in his shirt; that was the same pistol I had seen in his bosom that morning."

A portion of this same witness' statement made before the Justice of the Peace and introduced in evidence is as follows:

"I was in the house when my father was shot the first time. I didn't see him with any pistol nor didn't see him make any attempt to draw one. I was gone to Mr. Buchannon's about ten minutes. I didn't see any pistol under my father's body before I went up there, but I did see one after I came back."

The statements made to the Justice of the Peace were ex parte statements made in the absence of appellant without

opportunity of cross-examination by appellant, and while admissible as impeaching evidence, were clearly inadmissible as original evidence of the guilt of appellant and could not be so used by the jury. They directly contradicted in a way the defensive evidence given on the trial in behalf of appellant and were of such a character as that the jury could and very likely did consider them as original evidence. Under the circumstances the court should have limited such testimony in its charge to the purpose of impeachment and should have pointedly told the jury that such statements could not be used by them as evidence of appellant's guilt.

On motion for a new trial the evidence of the jurors shows that six of them had voted guilty and six had declined to vote, whereupon the said statement of Walter Sweeden was read to them, after which they agreed upon a verdict of guilty. Whether such statements were used as evidence of appellant's guilt might be disputed but that such statements may have been so used is manifest. The court's action in failing to limit this testimony was error. Joy v. State, 51 S. W. 933; Hiles v. State, 163 S. W. 717; Branch P. C., Sec. 188, where many authorities are cited.

The misconduct of the jury, while presenting a serious question, is a matter that will not likely occur on another trial, and we pretermit discussion of same.

Other errors assigned and briefed are in our opinion without merit.

For the error indicated the judgment is reversed and the cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.